IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| TINA M., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 1:23-cv-00213-BT |
| § | |
| COMMISSIONER, SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION & ORDER**

Before the Court is Plaintiff Tina M.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security (ECF No. 1). This action is before the undersigned United States Magistrate Judge by consent of the parties. *See* Pl.'s Consent (ECF No. 9). For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision.

**Background**

Plaintiff alleges that she is disabled due to a variety of physical and mental impairments, including high blood pressure, bipolar disorder, depression, hypertension, sleep apnea, and knee and back pain. Admin R. 98, 195, 250 (ECF No. 14-1). Plaintiff was born in 1985, and she claims that she has been disabled

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

since 2021. Admin. R. 19, 43, 180, 304; Pl. Brief 2 (ECF No. 15). She has an eleventh-grade education and past work experience as a home health aide, a housekeeper, and a cashier/clerk. Admin. R. 44, 55; Pl. Brief 2.

Plaintiff applied for supplemental security income (SSI) under Title XVI of the Social Security Act (the "Act") on April 26, 2021. Admin. R. 19, 170–72, 180-83, 304; Pl. Brief 1. Her claim was denied initially and upon reconsideration. Admin. R. 19, 94–96, 107–08; Pl. Brief 1–2. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a telephonic administrative hearing on February 6, 2023. Admin R. 39–61; Pl. Brief 2.

The ALJ found Plaintiff was not disabled and thus was not entitled to disability benefits under the Act. Admin R. 16–18, 32–33; Pl. Brief 14. Utilizing the five-step sequential evaluation,[2] the ALJ first found that Plaintiff has not engaged in substantial gainful activity since April 26, 2021, the application date and her

---

[2] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

alleged onset date. Admin R. 21. At the second step, the ALJ noted that Plaintiff experienced severe impairments of "obesity[;] hypertension; lumbar degenerative disk disease and scoliosis; sleep apnea; and bipolar disorder II disorder." Admin R. 21. At the third step, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal any listed impairment in appendix 1 of the social security regulations. Admin R. 22.

Next, the ALJ conducted a residual functional capacity (RFC) assessment. She found that Plaintiff had the RFC to

> Perform light work as defined in 20 CFR 416.967(b) except where the claimant can occasionally balance, stoop, kneel, and crouch, but must avoid climbing and crawling. The claimant must avoid commercial driving or operating motor vehicles as part of job duties. The claimant can understand, remember, and carry out simple instructions, make simple work related decisions, and adapt to occasional changes in a routine work setting. The claimant can accept instructions, and is capable of occasional interaction with supervisors, coworkers, and the public that is superficial and task oriented. The claimant can maintain attention, concentration, and work pace to perform simple tasks independently within a regular work schedule and complete a normal workday and workweek with ordinary supervision.

Admin R. 25.

At step four, the ALJ found that Plaintiff did not have any past relevant work. Admin R. 32. Lastly, the ALJ concluded that, considering the testimony of a vocational expert (VE) and Plaintiff's age, education, work experience, and RFC, she could perform jobs including photo finisher, marker, bagger, lens inserter, polisher, and final assembler, and that such jobs exist in significant numbers in the national economy. Admin R. 32–33. Thus, the ALJ determined that Plaintiff was

not disabled under the Act and, therefore, not entitled to receive disability benefits. Admin R. 33.

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review. Admin R. 1; Pl. Brief 2. Plaintiff then filed this action in federal district court, which contends that the ALJ failed to consider the severity of Plaintiff's knee impairment and its effect on the RFC, and further argues that the RFC is not supported by substantial evidence of record. Pl's Brief 1, 14–15, 20–21.

## Legal Standards

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance.").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the

Commissioner stated to support her decision. *Copeland*, 771 F.3d at 923. If the Commissioner's findings are supported by substantial evidence, the findings are conclusive, and the Commissioner's decision must be affirmed. *Martinez*, 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)), *adopted by* 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin*, 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citation omitted).

## Analysis

Plaintiff argues that the ALJ made two errors that warrant remand. First, Plaintiff argues that the ALJ erred by failing to consider whether Plaintiff's knee impairment constituted a severe impairment and by not considering the impairment in the RFC finding. Second, Plaintiff argues that the ALJ did not correctly consider all of Plaintiff's mental impairments on her RFC—specifically by

5

not accounting for her Global Assessment of Functioning (GAF) score or her alleged inability to finish tasks. Pl. Brief 20–24. After reviewing the hearing decision and the administrative record, the Court finds that the ALJ's RFC determination is supported by substantial evidence and the ALJ did not commit harmful error.

1. <u>Any error committed by the ALJ with respect to the severity of Plaintiff's knee impairment is harmless because it was considered in the RFC assessment</u>.

Plaintiff argues that the ALJ "failed to consider whether [Plaintiff's] knee impairment constituted a severe impairment" and consequently "failed to consider the effect of [her] knee impairment" on the RFC. Pl. Brief 14. In response, the Commissioner argues that "any failure to term [Plaintiff's] knee impairment as a 'severe' impairment is harmless because the ALJ considered the impact of this impairment in the RFC," as she discussed the effects of Plaintiff's knee pain throughout the decision. Comm'r. Brief 3 (ECF No. 16).

As a general rule, if an ALJ "fails to specifically determine the severity of a claimant's impairments at step two, remand is not required if the ALJ proceeds to the remaining steps of the disability analysis and considers the alleged impairment's—or its symptom's—effects on the claimant's ability to work at those steps." *Tipler v. Berryhill*, 2019 WL 2233627, at *13 (N.D. Tex. May 3, 2019), *adopted by*, 2019 WL 2234707 (N.D. Tex. May 23, 2019). By contrast, failure to consider whether a condition is a severe impairment can be reversible error when the ALJ never addresses the condition in its decision. *See Kimberly P. v. Kijakazi*,

6

2023 WL 7309497, at *3–4 (N.D. Tex. Oct. 13, 2023) (Rutherford, J.) (finding that the ALJ's "fail[ure] to acknowledge or discuss [plaintiff's brain atrophy and TBI] anywhere in her decision, let alone consider whether they were medically determinable impairments," was *not* harmless error), *adopted by, Kimberly P. v. Kijakaza*, 2023 WL 7309430 (N.D. Tex. Nov. 6, 2023); *Boothe v. Colvin*, 2013 WL 3809689, at *5 (N.D. Tex. July 23, 2013) (noting that "a case where the ALJ fail[s] to consider impairments at all" would *not* be harmless error).

Here, the ALJ did not make a specific severity finding regarding Plaintiff's alleged knee impairment. But this is not a case where the ALJ failed to acknowledge or discuss the impairment at all. Instead, the ALJ's written decision notes Plaintiff's reports to various medical professionals of "chronic knee pain" and "difficulty walking." Admin R. 26. The ALJ's decision also discusses Plaintiff's hearing testimony that knee pain "limited her standing to 15 minutes at a time, and sitting to up to an hour at a time" and "prevented her from working." Admin R. 25. The ALJ's decision specifically recites Plaintiff's testimony that she "use[d] a shower chair when bathing [and a] walker once in a while due to her knees," Admin R. 25–26, and that, while she "enjoyed going for walks" and was generally "independent in her personal care activities," she "use[d] her friend's walker to sit on or move around with" and "used her friend's shower chair to sit on when her knees would give her trouble." Admin. R. 29, 30.

After considering this evidence, the ALJ limited Plaintiff's RFC to performing light work "except where the claimant can occasionally balance, stoop,

7

kneel, and crouch, but must avoid climbing and crawling." Admin. R. 25. Thus, any error that the ALJ made by not explicitly determining the severity of Plaintiff's knee impairment is harmless because the ALJ clearly considered her alleged knee impairment and resulting limitations in determining her RFC. *Boothe*, 2013 WL 3809689, at *5 ("[A]ssuming *arguendo* that the ALJ erred by not finding [the plaintiff's impairments] severe, the error is harmless because the ALJ considered these condition in his RFC analysis); *see also Reliford v. Colvin*, 2013 WL 1787650, at *12–13 (S.D. Tex. Apr. 25, 2013) (finding that "even if the ALJ's failure to make a specific severity finding with regard to foot pain" was an error, it was harmless because he considered the medical evidence of such pain and the resulting limitations in the remaining steps of the analysis); *Gibbons v. Colvin*, 2013 WL 1293902, at *18–19 (N.D. Tex. Mar. 30, 2013) (explaining that "even if the ALJ committed error in excluding [plaintiff's] arthralgia and polyarthralgias in his disability analysis, such an error was harmless because the ALJ considered the effects of Plaintiff's chronic pain syndrome on her ability to work, and incorporated them in his RFC assessment by limiting her to light work [where] she [is] allowed to stand and stretch at regular intervals," as compared to the ALJ's harmful error in excluding plaintiff's arthritis because it was "not addressed . . . at any step of the disability analysis" and "nothing in the ALJ's narrative discussion could reasonably be said to incorporate" how that condition limits the ability to work).

8

2. <u>The ALJ's RFC finding is supported by substantial evidence.</u>

Plaintiff also argues that the ALJ did not account for all of Plaintiff's mental impairments in determining the RFC by "not consider[ing], or even mention[ing] [Plaintiff's] GAF scores in her decision, or explain[ing] why such GAF scores were unpersuasive." Pl. Brief 22. In response, the Commissioner argues that GAF scores are not determinative medical opinions. Comm'r Brief 6.

Before the 2017 amendments of the social security regulations, an ALJ's failure to address a claimant's GAF score in his written decision could be reversible error. *See, e.g.*, *Williams v. Saul*, 2020 WL 8254286, at *1, 6 (N.D. Tex. Dec. 30, 2020) (concluding that the ALJ reversibly erred by not discussing a doctor's GAF score assigned to the plaintiff, who had filed for disability benefits in January 2017, because the then-existing regulations under 20 C.F.R. § 404.1527 requires an ALJ to "consider all medical opinions in the record," including a GAF score), *adopted by*, 2021 WL 211812 (N.D. Tex. Jan. 21, 2021); *Ayala v. Saul*, No. 7:19-cv-24-O-BP, 2020 WL 1226879, at *3–4, Dkt. 1 at 1 (N.D. Tex. Mar. 13, 2020) (concluding that "the ALJ's failure to reference and 'explain the rejection of' [plaintiff's] GAF scores 'justifies a remand'" when plaintiff filed for benefits in June 2015).

However, under the new regulations—which apply to claims, like Plaintiff's, filed on or after March 27, 2017, *see* 20 C.F.R. § 404.1504—an ALJ does not need to analyze "'a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits.'" *Lashunda Y. F. v. Kijakazi*, 2022 WL

9

10311505, at *1 (N.D. Tex. Aug. 9, 2022) (quoting 20 C.F.R. § 404.1504). This applies to GAF scores because they are decisions made by a nongovernmental entity about whether a claimant is disabled. *Id.* Here, Plaintiff applied for supplemental security income (SSI) on April 26, 2021, *see* Admin. R. 21, and thus the ALJ's failure to address Plaintiff's GAF score in her written decision was not error. *See Lashunda Y. F.*, 2022 WL 10311505, at *1 (holding that the ALJ did not err in failing to address plaintiff's GAF score in his written decision because the new regulations applied to plaintiff's claim); *Macias v. Saul*, 2021 WL 2266171, at *7 (W.D. Tex. June 3, 2021) (applying the amended version of 20 C.F.R. § 404.1504 when the claimant filed for disability benefits six months after March 27, 2017 and concluding "the ALJ did not err in not discussing and not giving any weight to [the claimant's] GAF score" because the ALJ was not obligated to do so under the new regulations).

Lastly, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because it does not account for Plaintiff's alleged occasional inability to complete tasks. Pl. Brief 21–25. Specifically, Plaintiff asserts that even though the ALJ "found generally persuasive the findings of State agency psychological consultant Elizabeth Bergmann-Harms, Ph.D., at the reconsideration level," the ALJ did not acknowledge Dr. Bergmann-Harms's finding that Plaintiff's mental impairments "would occasionally interfere with her ability . . . for task completion." Pl. Brief 22 (citing Admin. R. 86). Plaintiff argues that even though the ALJ "specifically cited" Plaintiff's inability to finish tasks

10

occasionally "as a basis for finding [she] has a moderate limitation in her ability to concentrate, persist, or maintain pace," the ALJ did not account for such distractibility in the RFC finding. Pl. Brief 21. In response, the Commissioner argues that the ALJ's decision also sufficiently noted instances where Plaintiff's focus and concentration were said to be "good," Comm'r Brief 7–8, and that, "based on the evidence of record . . . the ALJ's finding that Plaintiff can 'understand, remember, and carry out simple instructions, make simple work decisions . . .' accounted for moderate limitations in concentration." Comm'r Brief 7–8 (citing Admin. R. 25).

The Court finds that the ALJ's RFC finding is supported by substantial evidence of record. First, the Court notes that Plaintiff's selected quote from Dr. Bergmann-Harms is misleading as it does not include the surrounding sentences, which support the ALJ's RFC finding:

> The claimant is able to carry out simple instructions. Her anxiety and depressive reaction as well as alleged hallucinatory experience and pain/fatigue would occasionally interfere with her ability for sustained concentration and persistence or for task completion. However, the claimant would be able to complete tasks at an acceptable pace.

Admin R. 84. Moreover, the ALJ's finding that Plaintiff has a "moderate limitation" with regards to "concentrating, persisting, or maintaining pace," Admin. R. 24, is properly accounted for through the RFC finding that Plaintiff is capable of "understand[ing], remember[ing], and carry[ing] out simple instructions [and] mak[ing] simple work related decisions, Admin R. 25. *See Jackson v. Colvin*, 2015

WL 7681262, at *7 (N.D. Tex. Nov. 5, 2015) (concluding that "the ALJ's mental RFC determination limiting [plaintiff] to the performance of carrying out only simple instructions [and] making simple decisions . . . is not contradictory to the ALJ's finding . . . that [plaintiff] was moderately limited in her ability to maintain concentration, persistence, or pace" and citing cases with same holding), *adopted by*, 2015 WL 7582339 (N.D. Tex. Nov. 25, 2015); *see also Dominick S. v. Kijakazi*, 2022 WL 2874705, at *3 (N.D. Tex. May 12, 2022) (Rutherford, J.) (finding—and noting that other courts have similarly found—that "limiting a plaintiff to the ability to carry out 'detailed but not complex tasks' is consistent with an ALJ's determination that a plaintiff had moderate limitations with regard to concentrating, persisting, or maintaining pace"), *adopted sub nom.*, *Simonetti v. Kijakazi*, 2022 WL 2872490 (N.D. Tex. July 20, 2022).

## Conclusion

The Court finds that substantial evidence supports the Commissioner's decision and therefore **AFFIRMS** the Commissioner's decision.

**SO ORDERED.**

March 11, 2025.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE